GREGORY FERRO, Plaintiff-Appellant, v. LORRAINE GRIFFITHS, Defendant-Appellee.—GREGORY FERRO, Plaintiff-Appellant, v. LORRAINE GRIFFITHS, Defendant-Appellee.

Third District   Nos. 3—03—0943, 3—04—0007 cons.

Opinion filed October 5, 2005.

HOLDRIDGE, J., dissenting.

David C. Hurst (argued), of Bruggeman, Hurst & Associates, Ltd., of New Lenox, for appellant.

Michael L. Resis and L. Marie Holley-Lucas, both of O'Hagan, Smith & Amundsen, L.L.C., of Chicago, Ellen L. Green (argued), of O'Hagan, Smith & Amundsen, L.L.C., of Wheaton, and Byron D. Knight, of Knight, Hoppe, Famming & Knight, of Des Plaines, for appellee.

JUSTICE LYTTON delivered the opinion of the court:

Plaintiff Gregory Ferro sued defendant Lorraine Griffiths for injuries he sustained when the vehicle driven by Griffiths struck the rear bumper of the van in which Ferro was a passenger. The jury returned a verdict in favor of Griffiths; the trial court subsequently granted Griffiths' postjudgment request for fees and costs. On appeal from the verdict (No. 3—03—0943), Ferro claims that the trial court made several errors during witness testimony, failed to direct a verdict or enter judgment notwithstanding the verdict in his favor, failed to exclude jurors who admitted that they were against lawsuits, and improperly questioned a witness from the bench. In a separately filed appeal (No. 3—04—0007), Ferro also claims that the court erred in entering sanctions for fees and costs when Griffiths' motion only requested costs. We affirm the judgment entered in favor of Griffiths in case No. 3—03—0943 and vacate the sanction order in case No. 3—04—0007.

On January 4, 1999, Ferro underwent cardiac surgery during which a number of stents were placed in his coronary artery. Following surgery, Ferro developed a heart attack rupture. Three days later, cardiovascular surgeon Dr. Ramesh Veeragandham performed open heart surgery to investigate Ferro's condition. He found fluid around the heart, a condition called pericardial effusion. The doctor drained the fluid, and Ferro was discharged on January 15, 1999. At the time of discharge, Ferro had chest pain at the incision site but did not have internal chest pain. He also required oxygen and was taking Coumadin to prevent clotting. He planned to spend several weeks recuperating at the home of his cousin, Darlene Hennis.

That afternoon, Hennis drove her van to the hospital to take Ferro home. An attendant escorted Ferro out of the hospital in a wheelchair and put him in the front passenger seat of the van. The attendant stood the oxygen tank on the floor of the van between Ferro's feet and legs. The top of the tank was less than one foot from Ferro's chest. While traveling home, Hennis stopped for a traffic light and was struck from behind by Griffiths' vehicle. Ferro described the impact as "very heavy." According to Ferro, the tank handle on the oxygen regulator hit him in the chest. He immediately felt pain and pressure inside his chest.

An ambulance transported Ferro back to the hospital. When he ar-

rived at the emergency room, the pain in his chest was building. X rays were taken, which showed an enlargement of the heart. Dr. Sennett, a radiologist, reviewed the X rays and determined that Ferro had a pericardial effusion. The next day, Dr. Veeragandham opened the lower part of the previous incision in Ferro's chest and drained approximately 600 cc of blood-stained fluid from the pericardial sac.

Ferro was released and later filed suit against Griffiths for the injuries caused by the accident. Prior to the trial, Ferro sought an order barring Griffiths from presenting any photographs of either vehicle to the jury or suggesting a relationship between the severity of the collision and the severity of injury to plaintiff. Ferro argued that although the pictures showed minor damage to the vehicles, he was "particularly susceptible" to injury because of his preexisting medical condition. At the hearing, Ferro's counsel argued that his injuries were aggravated because of the medical procedure that had just been performed. The trial court denied the motion, noting that plaintiff's condition did not preclude the relevancy of the photographs.

At the trial, Dr. Kevin Dolehide testified that he was Ferro's primary treating physician upon his readmission to the hospital. When Ferro arrived, he complained of chest pain and shortness of breath. Dr. Dolehide noted that Ferro did not have these problems when he was discharged a few hours earlier. Tests indicated that there was bleeding around Ferro's heart which was of sufficient quantity to put pressure on his heart and diminish the outflow of blood from the heart itself, a condition called tamponade. Dr. Veeragandham was consulted and diagnosed pericardial effusion with evidence of tamponade. Dr. Dolehide believed that the blunt trauma from the force of the oxygen tank caused the pericardial effusion because nothing else in the plaintiff's history would indicate any other cause. He admitted that a person can develop a pericardial effusion from surgery but stated that he would have to defer to a cardiologist as to how long after surgery a patient could develop such a condition. He also testified that the use of Coumadin could help develop fluid around the heart, even without trauma.

The trial judge then asked a few brief questions regarding the level at which a pericardial effusion "turns into a tamponade." Dr. Dolehide clarified that a pericardial tamponade is caused by excess fluid around the heart. The accumulation of fluid causes the muscles of the heart to restrict. It is the restriction of the heart that leads to the diagnosis of a tamponade. The judge thanked the doctor and dismissed him from the stand.

Dr. Charlene Sennett testified that she reviewed both Ferro's X rays of the chest cavity and the CT scan of his thorax. On direct

examination, Dr. Sennett testified that she did not know what caused the pericardial effusion in this case. She stated that she could not tell counsel "why this particular person had a pericardial effusion." The effusion could have been caused by recent open heart surgery, myocardial infarction or several other reasons.

Cardiologist Dr. David Cusick reviewed Ferro's CT scan with Dr. Sennett and noted that there was a moderate pericardial effusion present. An ultrasound of the heart revealed that Ferro was experiencing severe reduction in the squeezing function of the heart and that there was a large pericardial effusion present. Dr. Cusick did not note any bruising to Ferro's chest beyond that expected from the recent sternal surgery. Plaintiff's counsel then asked Dr. Cusick, "You did not formulate any opinions as to the causation of Mr. Ferro's pericardial effusion, did you?" Dr. Cusick responded, "I don't believe I did write down a specific cause of the effusion in my notes."

During cross-examination, Dr. Cusick explained that many things can cause a pericardial effusion, including various types of infections, heart disease and trauma. People who have had heart surgery can develop a pericardial effusion. He could not say to a reasonable degree of medical certainty that the car accident was the cause of Ferro's pericardial effusion. Dr. Cusick stated that, if the accident was not considered, the two likely causes of the pericardial effusion would be his recent heart attack and his cardiac surgery. Ferro's attorney did not object to defense counsel's questions. On redirect examination, Dr. Cusick admitted that the accident could have caused the pericardial effusion.

On direct examination, Dr. Veeragandham testified that about 50 cc of pericardial fluid are normally present around an adult male's heart. During Ferro's surgery on January 7, 1999, Dr. Veeragandham removed approximately 400 cc of clear serous fluid. The blood-stained fluid he drained from Ferro's heart after the accident was different from the fluid he drained during the January 7 surgery. He testified that it was possible that the fluid accumulated between the first surgery and the surgery on January 16.

On cross-examination, Dr. Veeragandham indicated that fluid could accumulate around the heart without blunt trauma to the chest. The same process that started the original accumulation of fluid can continue. The anticoagulant therapy that plaintiff received could have also caused bleeding in his pericardium. Dr. Veeragandham testified that he could not say the reason for the recurrence of the effusion. When asked whether he held an opinion as to how the pericardial effusion was caused, Dr. Veeragandham stated, "I do not have any opinion." Plaintiff's objection to his answer was overruled.

In closing argument, defense counsel argued that "three of the four doctors determined that there is not enough evidence for them to determine that this accident caused the injuries complained of here *** three out of four doctors can't be wrong." Plaintiff's counsel did not object to defense counsel's comments.

The trial court entered a directed finding on the issue of negligence. The jury returned a verdict in favor of Griffiths on the issue of liability. Ferro's posttrial motion for judgment notwithstanding the verdict or, alternatively, a new trial was denied.

## I

### Admission of Photographs

Ferro claims that it was improper and highly prejudicial to allow defendant to offer into evidence photographs that showed little damage to either vehicle. He argues that expert testimony is required to show a correlation between lack of damage to the vehicles and injury to plaintiff, citing the recent case of *DiCosola v. Bowman*, 342 Ill. App. 3d 530, 794 N.E.2d 875 (2003).

It is within the discretion of the trial court to decide whether evidence is relevant and admissible. *City of Rockford v. Elliott*, 308 Ill. App. 3d 735, 721 N.E.2d 715 (1999). "Relevant evidence" is that which has " 'any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.' " *DiCosola*, 342 Ill. App. 3d at 535, 794 N.E.2d at 879, quoting *Wojcik v. City of Chicago*, 299 Ill. App. 3d 964, 971, 702 N.E.2d 303, 309 (1998).

■ When the trial court makes a decision to admit pictures, it has to determine whether the photographs make the resulting injury to the plaintiff more or less probable. The court must determine whether the nature of the damage to the vehicles and the injury to the plaintiff are such that a lay person can readily assess their relationship, if any, without expert interpretation. See *Voykin v. Estate of DeBoer*, 192 Ill. 2d 49, 733 N.E.2d 1275 (2000). A reviewing court will not disturb the trial court's decision absent a clear abuse of that discretion. *DiCosola*, 342 Ill. App. 3d 530, 794 N.E.2d 875. An abuse of discretion occurs only where no reasonable person would take the position adopted by the trial court. *Taxman v. First Illinois Bank of Evanston*, 336 Ill. App. 3d 92, 782 N.E.2d 803 (2002).

In *DiCosola*, the trial court found that, absent expert testimony, the defendant could not admit photographs of the damage to the vehicles merely to argue that there was a relationship between the amount of property damage and the nature and extent of plaintiff's injury. Based on that decision, the court granted plaintiff's motion *in limine* to exclude the photographs of the vehicles.

On review, the appellate court noted that the decision to admit the photographs was within the trial court's discretion. The court held that the trial judge did not abuse his discretion in requiring expert testimony to relate the extent of the vehicular damage to the extent of plaintiff's injuries. The court rejected both the notion that such pictures must always be allowed or, on the other hand, that expert testimony is always necessary for the photographs to be admissible. *DiCosola*, 342 Ill. App. 3d at 537, 794 N.E.2d at 881.

■ We agree with *DiCosola*. In any given case, expert testimony may be required to show a proper correlation between the extent of the vehicular damage and the nature and extent of plaintiff's injury. However, we refuse to adopt a rigid rule that proscribes the admission of pictures without an expert. The critical question in admitting these photographs is whether the jury can properly relate the vehicular damage depicted in the pictures to the injury without the aid of an expert. This is an evidentiary question that the trial judge must resolve.

While this case is close, we cannot say that the trial court abused its discretion by admitting the photographs without expert testimony. The pictures were introduced to show why minimal damage to plaintiff's vehicle was relevant to the nature and extent of plaintiff's injuries. Ferro testified that the impact to the van was "very heavy," causing his body to move back and forth and hit the oxygen tank. Dr. Cusick testified that Ferro did not have any additional bruising to his chest after the accident. The photographs depicted the physical damage to both vehicles as a result of the accident. Under these facts, the trial judge could properly have found that the pictures, by themselves, were relevant to prove the matter at issue was "more or less probable." *Wojcik*, 299 Ill. App. 3d at 971, 702 N.E.2d at 309.

## II through VII

The material in these sections is nonpublishable under Supreme Court Rule 23.

## CONCLUSION

The judgment of the circuit court of Will County entered in favor of Griffiths is affirmed. The sanction order awarding costs and fees is vacated.

No. 3—03—0943, Affirmed.
No. 3—04—0007, Vacated.

McDADE, J., concurs.

JUSTICE HOLDRIDGE, dissenting:

I would find that the trial court abused its discretion in allowing the defendant to offer into evidence photographs of the damage to the vehicles without expert testimony to show a correlation between lack of damage to the vehicles and injury to the plaintiff. As the majority notes, whether to admit photographs is within the discretion of the trial court. *DiCosola v. Bowman*, 342 Ill. App. 3d 530 (2003). I agree with the majority's finding that there is no rigid rule that proscribes the admission of photographs without an expert. However, I am also mindful of the *DiCosola* court's concern that a jury not be allowed to engage in "unguided speculation" when invited by a party to "infer" that there is a correlation between the extent of vehicular damage and the extent of personal injuries. The *DiCosola* court, based upon its own research, noted this concern articulated by the Delaware Supreme Court:

> "In *Davis v. Maute*, 770 A.2d 36 (Del. 2001), the Delaware Supreme Court held that a party in a vehicular personal injury case gener- ally may not argue that there is a correlation between the extent of vehicular damage and the extent of a person's injury caused by the accident in the absence of expert testimony on that issue and may not rely on photographs of the vehicle(s) involved to indirectly ac- complish the same purpose. The *Davis* court decided that '[a]bsent such testimony, any inference by the jury that minimal damage to the plaintiff's car translates into minimal personal injuries to the plaintiff would necessarily amount to unguided speculation.' *Davis*, 770 A.2d at 40." *DiCosola*, 342 Ill. App. 3d at 537-38.

Here, the defendant sought admission of the photographs in order to invite the jury to infer from lack of damage to the vehicles that the impact was too light to cause the plaintiff's injuries. In closing argu- ment, defense counsel addressed the jury as follows:

> "But look at the impact to the car. You guys have—half of you have seen accidents like this every day. Minor fender benders, the ones that are in parking lots where it hits somebody, particularly a small car and a big van, it is not going to move it—Not only pictures show a minor impact. *** So what physically in your own common sense could possibly ram that [tank] into his chest."

Defense counsel asked the jury to engage in exactly the kind of "unguided speculation" against which the *DiCosola* court warned.

I disagree with the majority's characterization of this question as "close." The only reason for the admission of the photographs was to support the argument that lack of damage to the vehicles supports an inference that the impact did not cause the plaintiff's physical injuries. As the *DiCosola* court points out, without expert testimony to establish such an inference, the jury would be left to engage in unguided speculation.

Likewise, it was also improper to admit the photographs to rebut the plaintiff's testimony that the impact of the collision was "very heavy." Again, the *DiCosola* court addressed the same contention:

"In addition, the *Davis* court addressed the argument, similar to that presented by defendant to the trial court in the instant case, that the photographs of the minimal damage to the plaintiff's vehicle were admissible to support a commonsense inference that the plaintiff's complaints were not credible. The court held that counsel could not rely on photographs of the vehicle(s) involved to accomplish indirectly what the court had already determined was improper argument. *Davis*, 770 A.2d at 41." *DiCosola*, 342 Ill. App. 3d at 538.

I agree. The defendant should not be allowed to invite unguided speculation under the guise of attacking the plaintiff's credibility.

I see no relevance of the photographs in the instant matter other than to advance the theory that the light damage to the vehicles translates into no injury to the plaintiff. Such an argument could only be made by way of expert testimony as to the effect of degrees of impact upon the human body.

I would find that the trial court abused its discretion in allowing the photographs into evidence and allowing the argument therefrom that the plaintiff's injuries could not have been caused by the impact from the collision. Because the question of causation of the plaintiff's injuries was the essential element in conflict, I would find that the photographs and the argument therefrom worked a prejudice upon the plaintiff. I would therefore reverse the judgment of the circuit court and remand the matter for a new trial.

As I would remand on this issue, I would not reach the other issues raised in this appeal.

J.S.A., Plaintiff-Appellee, v. M.H. *et al.*, Defendants-Appellants.

Third District   No. 3—04—0678

Opinion filed October 28, 2005.