Rule 23 order filed
March 6, 2007;
Motion to publish granted
April 10, 2007.

NO. 5-05-0545

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| SCOTT JACKSON, | ) Appeal from the |
| | ) Circuit Court of |
|    Plaintiff-Appellant, | ) Madison County. |
| | ) |
| v. | ) No. 03-L-2011 |
| | ) |
| DAVID W. SEIB, | ) Honorable |
| | ) Phillip J. Kardis, |
|    Defendant-Appellee. | ) Judge, presiding. |

_____

JUSTICE SPOMER delivered the opinion of the court:

The plaintiff, Scott Jackson, appeals from the order of the circuit court of Madison County that entered a judgment for the defendant, David W. Seib, pursuant to a jury verdict. The plaintiff raises numerous issues on appeal, which we restate as follows: (1) whether the circuit court erred in denying the plaintiff's requests for a directed verdict, a judgment notwithstanding the verdict (*n.o.v.*), or a new trial on the issue of the defendant's negligence, (2) whether the circuit court erred in allowing the admission of photographs of the plaintiff's vehicle following the accident, (3) whether the circuit court erred in allowing the defendant's experts to testify that, in their opinion, the plaintiff was not injured as a result of the defendant rear-ending him, (4) whether the circuit court erred in excluding the plaintiff's demonstrative evidence as a sanction for a discovery violation, (5) whether the circuit court erred in denying the plaintiff's proposed jury instruction on an increased risk of future injury, and (6) whether the circuit court erred in admitting the testimony of the investigating officer, who had no independent recollection of the accident. For the following reasons, we affirm the judgment entered by the circuit court.

The facts necessary for our disposition of this appeal are as follows. On December 11, 2003, the plaintiff, Scott Jackson, filed a complaint in the circuit court of Madison County, alleging that the defendant, David Seib, was negligent when he rear-ended the plaintiff, causing the plaintiff various personal injuries and lost wages. The case was tried to a jury of 12, beginning on June 20, 2005.

The plaintiff was the first to testify in his case in chief. He testified that he had been at a dead stop for 20 to 30 seconds in a traffic jam on Interstate 270 in his 1998 Mitsubishi Gallant when the defendant rear-ended him, pushing him into the vehicle in front of him. Upon impact he was launched forward due to an apparent failure of his seat belt, pulling his left arm. In addition, he testified that a part of his head struck the windshield and that he experienced a headache and dizziness immediately following the accident. However, he did not request an ambulance. Instead, he waited for his wife to pick him up and drive him to the emergency room.

According to the plaintiff, while at the emergency room, he was diagnosed with a concussion and a cervical neck sprain. In the weeks following the accident, he began experiencing memory loss, sexual dysfunction, an inability to concentrate, massive headaches, blurry vision, and nausea. He also testified that he had left shoulder pain and that his left shoulder started rotating out of socket. The plaintiff testified that due to these symptoms, he was unable to work for approximately two months.

The plaintiff underwent a short period of physical therapy at a facility he referred to as MECCA. The plaintiff explained that although he told his physical therapist two weeks after the accident that he had split logs, he had used a log-splitting machine with assistance from his father-in-law. He also participated in extensive treatment with Associated Physicians. He visited Associated Physicians approximately 40 times in a two-month period, according to his testimony. Associated Physicians referred him to an ophthalmologist and

2

an orthopedic surgeon. He also participated in an independent medical exam with Dr. Beyer at the defendant's request. The plaintiff explained that prior to the accident, he had been treated for depression and anxiety and had been prescribed Celexa, an antidepressant, and amitriptyline, an antianxiety medication. According to the plaintiff, these medications helped him to sleep. He also had a previous right shoulder injury while in college.

According to the plaintiff's testimony, the memory loss he experienced following the accident was quite extensive. He testified to several specific instances of extreme memory loss. For example, he testified that he forgot his daughter's name, that he forgot that he had a dog, and that, on one occasion, he left his vehicle running in the parking lot of a Home Depot and walked a mile and a half to his doctor's office.

The plaintiff also described a subsequent accident in 2003 in which he rear-ended a vehicle. However, the plaintiff asserted that he was not injured in this accident. He attributed one visit to Associated Physicians to this accident and testified that he returned to work immediately.

On cross-examination, the defendant presented a series of photographs to the plaintiff and asked him if they fairly and accurately portrayed the condition of his vehicle as a result of the accident. The plaintiff testified that he did not think so, but he was impeached by his prior inconsistent statement in his deposition that they did. The plaintiff objected to the photographs being admitted into evidence, based on the lack of a foundation. The circuit court overruled the objection, stating that the foundation was sufficient by way of the admission in the deposition. The photographs, which depict extremely minor damage to the plaintiff's vehicle, were admitted into evidence.

Annette Shirley, billing supervisor and records custodian for Associated Physicians, described the foundation of the medical bills. According to Ms. Shirley, the bills, which totaled $15,978, were reasonable and customary. Robert Fast, an Associated Physicians

3

chiropractor, testified that the plaintiff first visited him on October 15, 2002. At that time, the plaintiff complained of neck pain, headache, shoulder pain, dizziness, nausea, and memory loss. He was diagnosed with postconcussion syndrome and placed on an extensive multidisciplinary treatment program consisting of physical therapy, chiropractic adjustments, trigger point injections, diagnostic and therapeutic ultrasounds, and the use of state-of-the-art MEDEX equipment. He was also referred to an ophthalmologist, an orthopedic surgeon, and a neurologist. The neurological exam results were normal, reflecting normal memory, normal intellect, fluent and articulate speech, and normal visual acuity. Nevertheless, Dr. Fast stated that all the treatment was reasonable and necessary. He also testified that the postconcussion syndrome was a result of the whiplash and that a concussion can occur without impact and at low speed. The plaintiff was discharged at maximum medical improvement on January 24, 2003.

Trooper Andrew Connor testified that he investigated the accident and generated a police report. He testified that there was no visible injury to either party and that he determined no ambulance was necessary. Trooper Connor's investigation revealed that only two vehicles had been involved in the accident. The defendant was ticketed for the failure to reduce speed to avoid a crash. According to Trooper Connor's testimony, the plaintiff was slowing in traffic when he was struck from the rear. On cross-examination by the plaintiff, Trooper Connor testified that he does not remember anything regarding the accident without looking at the police report.

Dr. Fred Ginsberg, medical director of Associated Physicians, testified via a video evidence deposition. Dr. Ginsberg described the same facts as Dr. Fast with regard to the plaintiff's subjective complaints, the diagnosis of postconcussion syndrome, and the plaintiff's treatment at Associated Physicians. Dr. Ginsberg mirrored Dr. Fast's opinion that whiplash can occur in a low-impact accident and that all the treatment of the plaintiff was

4

reasonable and necessary. All the symptoms exhibited by the plaintiff, including the instances of extreme memory loss, were consistent with postconcussion syndrome. In addition, Dr. Ginsberg testified that patients who are injured are predisposed to future injury in the same areas of the body. Dr. Ginsberg testified that he did not see the postaccident photos of the vehicles.

The defendant commenced his case in chief by introducing the testimony of Dr. Craig Beyer via a video evidence deposition. Dr. Beyer is a board-certified orthopedic surgeon who had reviewed the plaintiff's medical records, X rays, and MRI films and also conducted an independent medical exam of the plaintiff. According to Dr. Beyer, the history given by the plaintiff in the emergency room was that the defendant was traveling 50 miles per hour when he rear-ended the plaintiff. Dr. Beyer testified that he relied on photographs of the vehicle with regard to the nature and severity of the impact because that information is crucial to his opinion regarding the causal relationship between the accident and the plaintiff's complaints. Dr. Beyer testified that, based on his education in biomechanics and physics, it is clear from the photographs that there was not a 50-mile-per-hour impact as the plaintiff suggested in the emergency room.

Dr. Beyer conducted an independent medical exam of the plaintiff on March 8, 2005. It was his opinion that the plaintiff's subjective complaints regarding his shoulder injury were atypical and that any instability of the shoulder was due to the plaintiff's generalized ligamentous laxity, which is not impacted by a single injury event. According to Dr. Beyer, a strengthening of the muscles surrounding the shoulder would correct any instability. Dr. Beyer's review of the plaintiff's MRI revealed mild rotator-cuff tendinitis. He also pointed out that the emergency room records revealed that the plaintiff made no complaint of shoulder pain following the accident. In addition, Dr. Beyer's review of the plaintiff's medical records revealed that the plaintiff had told his physical therapist at MECCA that he

5

had raked his yard and cut and stacked firewood two weeks after the accident. According to Dr. Beyer, that type of activity was inconsistent with an acute shoulder injury. Dr. Beyer criticized Dr. Shikar, who had diagnosed a labral tear of the shoulder, stating that it is highly inaccurate to diagnose a significant shoulder injury with ultrasound. Dr. Beyer testified that in his opinion, within a reasonable degree of medical certainty, the plaintiff's subjective complaints and the condition of his shoulder had no causal connection with the accident.

Dr. Karen Pentella, an assistant professor of neurology at Washington University, also testified on behalf of the defendant. Dr. Pentella testified that she had conducted a review of the plaintiff's medical records at the request of the defendant. With regard to the emergency room records, Dr. Pentella testified that there were no objective findings of head trauma. All the subsequent testing of the plaintiff, including a CT scan of the brain, an X ray of the left shoulder, an MRI of the brain and neck, and an EEG, was normal. Dr. Pentella also noted that the history given by the plaintiff to his treating providers was increasingly dramatic. According to Dr. Pentella, any diagnosis of postconcussion syndrome was based on subjective complaints only, with no objective findings. Dr. Pentella noted that the plaintiff has preexisting issues, including previous treatment for anxiety and depression, which can cause headache and dizziness. Dr. Pentella concluded, within a reasonable degree of medical certainty, that the plaintiff did not have a concussion. Dr. Pentella cited the lack of impact and the lack of an alteration of consciousness as a part of the basis for her opinions.

With regard to the plaintiff's shoulder complaints, Dr. Pentella testified that a shoulder exam by a Dr. Stein after the accident revealed that the plaintiff had a full range of motion. Also, her review of the MRI of the shoulder did not reveal a labral tear. Dr. Pentella noted that further testing had been recommended but never conducted. It was Dr. Pentella's opinion that the plaintiff did not require shoulder surgery.

6

The defendant testified on his own behalf, explaining that he had been on his way to work on the morning of the accident, in stop-and-go traffic on Interstate 270 westbound. He contacted the rear of the plaintiff's vehicle when he looked down briefly to reach a pack of cigarettes. According to the defendant, he was driving at a speed of one to three miles per hour when the impact occurred. The defendant testified that at the time of the impact he did not see the plaintiff fly around in his car. After the accident, there was no observable injury to the plaintiff, and the plaintiff said he was fine. The only damage to the defendant's vehicle was a slightly bent license plate.

Jenny Burgner, coordinator at the Southern Illinois Sleep Disorder Center, testified that six to eight weeks prior to the accident the plaintiff had been given an appointment for an initial consultation and snoring evaluation. His appointment was on October 3, 2002, only two days after the accident. The records for that date show that the plaintiff made no complaints of pain and did not mention the accident at that appointment. He also answered an extensive questionnaire regarding his history. The plaintiff returned to the sleep disorder center on November 14, 2002. At that time, he did report the accident and complained of head and neck pain.

On rebuttal, the plaintiff sought to introduce, as demonstrative evidence, a model bumper from a 1998 Mitsubishi Gallant. The defendant objected based on the plaintiff's failure to supplement discovery responses with this evidence. The circuit court sustained the defendant's objection based on the discovery violation. At the jury instruction conference, jury instructions on the elements of negligence, proximate cause, and damages were agreed to by the parties. However, the plaintiff sought to introduce Illinois Pattern Jury Instructions, Civil, No. 30.04.04 (2006), entitled "Increased Risk of Harm–Calculation." The circuit court denied the plaintiff's tendered instruction.

On the last day of the trial, the plaintiff filed a motion for a directed verdict. The

motion argued that the plaintiff was entitled to a judgment as a matter of law regarding negligence, proximate cause, and damages. The circuit court denied the plaintiff's motion, stating that the issue of proximate cause is not such that it would be appropriate for a directed verdict. The plaintiff then made an oral motion for a directed verdict on liability only. The circuit court denied the motion as untimely because the jury was already in deliberations. The jury returned with a verdict for the defendant and against the plaintiff.

On July 22, 2005, the plaintiff filed a posttrial motion for a directed verdict or a judgment *n.o.v.* or, in the alternative, a new trial. At a hearing held on August 18, 2005, the circuit court denied the plaintiff's posttrial motion. On September 16, 2005, the plaintiff filed a notice of appeal.

The first three arguments in the plaintiff's brief can be combined into one argument that the circuit court erred in denying his requests for a directed verdict, a judgment *n.o.v.*, or a new trial on the issue of the defendant's negligence. There are established standards to be used in determining whether a directed verdict, a judgment *n.o.v.*, or a new trial should be granted. *Maple v. Gustafson*, 151 Ill. 2d 445, 453 (1992). A directed verdict or a judgment *n.o.v.* is properly entered in those limited cases where all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Maple*, 151 Ill. 2d at 453. In ruling on a motion for a directed verdict or a judgment *n.o.v.*, a court does not weigh the evidence, nor is it concerned with the credibility of witnesses; rather, it may only consider the evidence, and any inferences therefrom, in the light most favorable to the party resisting the motion. *Maple*, 151 Ill. 2d at 453. Also, a judgment *n.o.v.* may not be granted merely because a verdict is against the manifest weight of the evidence. *Maple*, 151 Ill. 2d at 453. We apply the *de novo* standard of review to the trial court's denial of a motion for a directed verdict, as well as its denial of a judgment *n.o.v. Moss v. Amira*, 356 Ill. App. 3d 701, 705

8

(2005).

In contrast, on a motion for a new trial, a court will weigh the evidence and set aside the verdict and order a new trial if the verdict is contrary to the manifest weight of the evidence. *Maple*, 151 Ill. 2d at 454. A verdict is against the manifest weight of the evidence where the opposite result is clearly evident or where the findings of the jury are unreasonable, arbitrary, and not based on the evidence. *Maple*, 151 Ill. 2d at 454. A court's ruling on a motion for a new trial will not be reversed except in those instances where it is affirmatively shown that it clearly abused its discretion. *Maple*, 151 Ill. 2d at 455. In determining whether the trial court abused its discretion, the reviewing court should consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial. *Maple*, 151 Ill. 2d at 455.

After carefully reviewing the evidence adduced at the trial as set forth above, we cannot find that the findings of the jury were unreasonable, arbitrary, and not based on the evidence. The jury in this case heard conflicting testimony regarding what, if any, injuries the plaintiff had sustained as a result of the accident in question. The credibility issues in the trial were especially significant in light of the subjective nature of the plaintiff's complaints, the photographic evidence showing the minor nature of the impact, and Dr. Pentella's and Dr. Beyer's findings. Whether a concussion could occur with little or no impact was also contested. The question of whom to believe and what weight to be given to all the evidence was a decision for the trier of fact.

Even assuming that the defendant admitted breaching the standard of care when he looked down briefly to locate his pack of cigarettes, the motion for a directed verdict that the plaintiff filed prior to submitting the instructions to the jury was directed toward all the elements, including proximate cause and damages, which were clearly at issue. In addition, the plaintiff agreed to instructing the jury on these issues. The plaintiff's oral motion for a

9

directed verdict on the issue of liability only was clearly untimely, because the jury had begun deliberating. For all these reasons, we cannot say that the circuit court erred in denying the plaintiff's requests for a directed verdict, a judgment *n.o.v.*, or a new trial.

We also decline the plaintiff's invitation to fashion a rule based upon public policy that permits the plaintiff to recover for all medical testing reasonably related to the events at issue regardless of whether the testing reveals an injury. That rule would be contrary to our public policy and well-established principles of negligence, which require a breach of duty, causation, and damages before a person can be held liable for the medical expenses of another as a result of an accident. See, *e.g.*, *McLean v. Rockford Country Club*, 352 Ill. App. 3d 229, 232-33 (2004) (citing *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140 (1990)).

The plaintiff next argues that the circuit court erred in admitting into evidence the photographs of the plaintiff's vehicle following the accident. Specifically, the plaintiff argues that there was an insufficient foundation for the admission of the photographs into evidence, that the photographs were not probative of any issue in the case, that it was erroneous to admit the photographs into evidence as probative of the speed of the impact, and that the prejudicial nature of the photographs outweighs any probative value. It is the function of the trial court to determine the admissibility of evidence, and its rulings will not be disturbed absent an abuse of discretion. *Independent Trust Corp. v. Hurwick*, 351 Ill. App. 3d 941, 952 (2004).

With regard to the lack of a foundation, the plaintiff argues that the photographs were not taken by any witness who testified at the trial and that the defendant never identified who had taken the photographs so that the plaintiff could depose the photographer to challenge the photos and what they depicted. However, the plaintiff cites no authority in support of his contention that such identification is required. The plaintiff admitted in his deposition that the photographs fairly and accurately portrayed the condition of his vehicle after the accident.

10

Although he attempted to backtrack from this testimony at the trial, the plaintiff was properly impeached with his prior inconsistent statement. We cannot say the circuit court abused its discretion when it determined that the prior admission by the plaintiff was a sufficient foundation for the photographs.

The plaintiff also claims it was improper and highly prejudicial to allow the defendant to offer into evidence photographs showing little damage to the plaintiff's vehicle. He argues that expert testimony is required to show a correlation between the lack of damage to the plaintiff's vehicle and an injury to the plaintiff, citing *DiCosola v. Bowman*, 342 Ill. App. 3d 530 (2003). As explained in the later case of *Ferro v. Griffiths*, 361 Ill. App. 3d 738, 742 (2005), in *DiCosola*, the trial court granted the plaintiff's motion *in limine* to exclude photographs of the lack of damage to the vehicles, and on review, the appellate court found that this ruling was not an abuse of discretion. *DiCosola*, 342 Ill. App. 3d at 537. The appellate court rejected the notion that such pictures must always be allowed or, on the other hand, that expert testimony is always necessary for the photographs to be admissible. *Ferro*, 361 Ill. App. 3d at 743. The court refused to adopt a rigid rule that proscribes the admission of pictures into evidence without an expert. *Ferro*, 361 Ill. App. 3d at 743. The critical question in admitting these photographs into evidence is whether the jury can properly relate the vehicular damage depicted in the pictures to the injury without the aid of an expert. *Ferro*, 361 Ill. App. 3d at 743. This is an evidentiary question that the trial judge must resolve. *Ferro*, 361 Ill. App. 3d at 743.

In this case, Dr. Beyer testified that he has been educated in both biomechanics and physics. Dr. Beyer testified that he relied on photographs of the vehicle with regard to the nature and severity of the impact because that information is crucial to his opinion regarding the causal relationship between the accident and the plaintiff's complaints. Dr. Beyer testified that, based on his education in biomechanics and physics, it is clear from the

11

photographs that there was not a 50-mile-per-hour impact as the plaintiff suggested in the emergency room. However, even assuming that Dr. Beyer was not qualified to give an expert opinion regarding the severity of the impact based on the photographs, we cannot say that the trial court abused its discretion by admitting the photographs into evidence without expert testimony. A review of the photographs reveals that it was clear that the plaintiff was not rear-ended at anywhere near the speed he suggested. Under these facts, the circuit court could properly have found that the pictures, by themselves, were relevant to prove that the matter at issue was "more or less probable." See *Ferro*, 361 Ill. App. 3d at 743.

The plaintiff next argues that the circuit court erred in allowing the defendant's experts to testify that, in their opinion, the plaintiff was not injured as a result of the defendant rear-ending him. The decision whether to admit expert testimony is within the sound discretion of the trial court, and a ruling will not be reversed absent an abuse of that discretion. *Snelson v. Kamm*, 204 Ill. 2d 1, 24 (2003). The plaintiff makes several arguments with respect to this issue, many of which are not supported by citation to authority. First, the plaintiff argues that the defendant failed to establish that Dr. Beyer's and Dr. Pentella's opinions were within a reasonable degree of medical or scientific certainty. A close reading of the record reflects that both experts so testified. Second, the plaintiff argues, without citation to authority, that the defendant's experts' opinions were not supported by the medical records, did not reflect a review of all the evidence, and improperly invaded the province of the jury. It has been settled for some time that expert opinion testimony on an ultimate fact or issue does not impermissibly intrude on the fact finder's role, as long as all of the other requirements for the admission of the testimony are met. *Zavala v. Powermatic, Inc.*, 167 Ill. 2d 542, 545 (1995). The reason for this is that the trier of fact is not required to accept the expert's conclusion. *Zavala*, 167 Ill. 2d at 545.

In addition, facts, data, and opinions that form the basis of the expert's opinion may

12

be developed upon cross-examination. *Piano v. Davison*, 157 Ill. App. 3d 649, 671 (1987). There is a heavy burden on the cross-examiner to expose any weakness inherent in the expert's opinion, but this burden is not excessive in light of Illinois's extensive pretrial discovery procedures. *Piano*, 157 Ill. App. 3d at 671 (citing *Wilson v. Clark*, 84 Ill. 2d 186 (1981)). Great liberality should be allowed an expert in determining the basis of his opinions, and the weight to be given an opinion is for the trier of fact. *Piano*, 157 Ill. App. 3d at 671 (citing *Melecosky v. McCarthy Brothers Co.*, 115 Ill. 2d 209 (1986)). In this case, the plaintiff had the opportunity to and did in fact cross-examine the defendant's experts with regard to which evidence they had considered and which medical records were inconsistent with their opinion. Accordingly, we reject the plaintiff's arguments that the opinions of the defendant's experts were based on inadequate information and improperly invaded the province of the jury.

The plaintiff's third argument with respect to the issue of whether the trial court erred in admitting the defendant's experts' opinions that the plaintiff was not injured as a result of the accident is that their testimony concerning the force of the impact lacked the foundation required for novel scientific evidence. Illinois adheres to the "general acceptance" standard established in *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923), for the admission of novel scientific evidence. *In re Commitment of Simons*, 213 Ill. 2d 523, 529-30 (2004). Initially, we note that the plaintiff never made any objection to the foundation of the defendant's expert testimony as novel scientific evidence and never requested an evidentiary *Frye* hearing before the circuit court. Accordingly, this issue was forfeited. See *Snelson v. Kamm*, 204 Ill. 2d 1, 25 (2003).

Even if the plaintiff had properly preserved the *Frye* issue, we find that the defendant's experts' opinions were not subject to the *Frye* standard because they did not constitute novel scientific evidence. The trial court's *Frye* analysis is subject to *de novo* review. *In re*

13

*Commitment of Simons*, 213 Ill. 2d at 531. In conducting that *de novo* review, we may consider not only the trial court record but also, where appropriate, sources outside the record. *In re Commitment of Simons*, 213 Ill. 2d at 531. Although Illinois has not adopted the standard enunciated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993), for the admission of scientific opinion testimony, the Supreme Court's discussion regarding what constitutes "scientific knowledge" can still inform our analysis of what constitutes scientific opinion testimony. See *Harris v. Cropmate Co.*, 302 Ill. App. 3d 364, 369 (1999). To qualify as "scientific knowledge," an inference or assertion must be derived from the scientific method. *Daubert*, 509 U.S. at 590, 125 L. Ed. 2d at 481, 113 S. Ct. at 2795. A scientific expert is an expert who relies on the application of scientific principles, rather than on skill or experienced-based observations, for the basis of his opinion. *Harris*, 302 Ill. App. 3d at 369.

Although the defendant's experts' opinions that the plaintiff was not injured as a result of the accident relate to science, their testimony escapes the *Frye* analysis because it represents nothing more that the experts' experience and observations, combined with a deductive process familiar to the average trier of fact. See *Harris*, 302 Ill. App. 3d at 370. This is the case even if a different expert might have reached the same or a different conclusion using some specific, advanced scientific technique, such as that of the biomedical engineer the plaintiff refers us to in *Whiting v. Coultrip*, 324 Ill. App. 3d 161 (2001). See *Harris*, 302 Ill. App. 3d at 370. Thus, the need for the trial court to provide a preliminary screening to protect against the natural inclination of the jury to assign significant weight to the scientific techniques does not exist. See *Harris*, 302 Ill. App. 3d at 370. Simply because scientific principles *relate to* aspects of an opinion witness's testimony does not transform that testimony into "scientific" testimony. See *Harris*, 302 Ill. App. 3d at 370. Accordingly, the causation testimony of the defendant's experts did not constitute "scientific" evidence.

14

Even assuming that the methods employed by the defendant's experts constituted scientific methods and thus fell within the realm of "scientific" evidence, we nonetheless conclude that these methods were not "novel." Neither expert purported to have relied upon some " '[s]trikingly new, unusual, or different' " method (*Harris*, 302 Ill. App. 3d at 372 (quoting American Heritage Dictionary of the English Language 898 (1975))) in reaching his or her opinion. Unlike the expert in *Whiting*, who presented a biomechanical analysis of the forces present in the accident, the defendant's experts in this case presented their opinions based on their observations and past experiences as doctors. While the appellate court in *Whiting* found no cases in Illinois and less than a handful of cases nationwide in which the admissibility of the testimony of a biomedical engineer was considered, Illinois case law is replete with physicians who have testified, based on observation and experience, regarding their opinion of whether a claimant was injured. For all these reasons, the circuit court did not err when it admitted the defendant's experts' testimony that, in their opinion, the plaintiff was not injured as a result of the accident.

We next address the plaintiff's argument that the circuit court erred in refusing to admit as demonstrative evidence a bumper from the same type of vehicle as that which the plaintiff was driving due to the plaintiff's failure to produce this evidence in discovery. The admission of evidence, as well as the decision to sanction a party for a discovery violation, is within the circuit court's discretion, and the court's ruling will not be reversed absent an abuse of discretion. *Clayton v. County of Cook*, 346 Ill. App. 3d 367, 377 (2003) (citing *Gill v. Foster*, 157 Ill. 2d 304, 312-13 (1993)). An abuse of discretion may be found only where no reasonable person would take the view adopted by the circuit court. *Clayton*, 346 Ill. App. 3d at 377. Illinois Supreme Court rules on discovery are *mandatory* rules of procedure subject to strict compliance by the parties. *Clayton*, 346 Ill. App. 3d at 377. Parties have a duty to seasonably supplement or amend prior answers or responses whenever new or

15

additional evidence or information subsequently becomes known to that party. 166 Ill. 2d R. 214.

The plaintiff does not contest that the defendant's requests for production encompassed the demonstrative evidence at issue or that he failed to produce the bumper at the trial. The plaintiff simply argues that the trial court's sanction in refusing to admit the evidence was an abuse of discretion. The factors used by reviewing courts to determine whether to strike an undisclosed witness's testimony as a sanction for a violation of Illinois Supreme Court Rule 213 (177 Ill. 2d R. 213) are instructive. These are: (1) surprise to the adverse party, (2) the prejudicial effect of the evidence, (3) the nature of the evidence, (4) the diligence of the adverse party, (5) whether the objection to the evidence was timely, and (6) the good faith of the party calling the witness. *Clayton*, 346 Ill. App. 3d at 380. Applying these factors to the case at bar, we conclude that the plaintiff attempted to introduce the model bumper as demonstrative evidence of the severity of the impact required to cause damage to it, which was a central issue in the case. The defendant had not been informed of the plaintiff's intent to introduce this type of evidence until the trial had already commenced. The defendant made a timely objection to the evidence, and the plaintiff gave no good-faith explanation for his failure to produce the bumper prior to the trial. Under these circumstances, we cannot say that the circuit court abused its discretion in refusing to admit the bumper into evidence as a sanction for the plaintiff's discovery violation.

Next, the plaintiff argues that the circuit court erred when it refused to instruct the jury on an increased risk of future injury as currently set forth in Illinois Pattern Jury Instructions, Civil, Nos. 30.04.03 and 30.04.04 (2006) (hereinafter IPI Civil (2006) Nos. 30.04.03, 30.04.04). Permission to publish this instruction was granted in 2004. However, at the time of the trial, the instruction had not yet been published in the bound volumes but was available on the website of the Illinois Supreme Court.

16

The determination of whether to give a specific jury instruction is within the circuit court's discretion, and that decision will not be disturbed absent an abuse of discretion. *Clayton*, 346 Ill. App. 3d at 387-88. The standard for determining whether that abuse occurred is whether the instructions given fairly stated the law without having prejudiced a party and deprived him of a fair trial. *Clayton*, 346 Ill. App. 3d at 388 (citing *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 505 (2002)). To justify an instruction, some evidence in the record must support the theory. *Clayton*, 346 Ill. App. 3d at 388. The use of IPI Civil (2006) Nos. 30.04.03 and 30.04.04 is only appropriate in a case where the damages claimed are within the scope of the ruling in *Dillon v. Evanston Hospital*, 199 Ill. 2d 483 (2002). See IPI Civil (2006) No. 30.04.03, Notes on Use.

The Illinois Supreme Court in *Dillon* held that a plaintiff is permitted to recover for all demonstrated injuries, including the plaintiff's increased risk of future injuries. *Dillon*, 199 Ill. 2d at 504. The burden is on the plaintiff to prove that the defendant's negligence increased the plaintiff's risk of future injuries. *Dillon*, 199 Ill. 2d at 504. In this case, the plaintiff's expert, Dr. Fast, testified that once a patient has previously suffered an injury, that patient will have the possibility of reinjuring that area. It is arguable whether this is sufficient evidence of a future injury to justify the instruction. Nonetheless, it is well established that where a defendant is found not liable, alleged errors pertaining solely to the question of damages do not afford grounds for a reversal. *Schuchman v. Stackable*, 198 Ill. App. 3d 209, 231 (1990). Here the jury was instructed that if it decided for the defendant on the question of liability, it would have no occasion to consider the question of damages. The jury decided for the defendant on the question of liability. Therefore, any error on the part of the circuit court for a failure to instruct the jury on the increased risk of future injuries is not a ground for a reversal. See *Schuchman*, 198 Ill. App. 3d at 231.

Finally, the plaintiff argues that the circuit court erred in admitting the testimony of

Trooper Connor, who testified on cross-examination that he had no independent recollection of his investigation of the accident and was relying solely on his police report to testify. Our review of the record reveals that, on cross-examination, Trooper Connor did admit he had no independent recollection of the accident, even after refreshing his memory with the police report. In addition, the report could not be read into evidence as past recollection recorded because the defendant had not laid the foundation by having the witness testify that he had recorded the facts at the time of the occurrence or soon afterward and that his report was accurate and true when made. See *Rigor v. Howard Liquors, Inc.*, 10 Ill. App. 3d 1004, 1010-11 (1973).

Although it was error for the circuit court to admit Trooper Connor's testimony, the defendant suggests that the plaintiff waived this issue by failing to move to strike or object to the testimony after it had been elicited that Trooper Connor had no independent recollection and by failing to raise the issue in his posttrial motion. In order to properly preserve an issue for an appeal, a party must both make a contemporaneous objection and raise the issue in a posttrial motion. *Kim v. Evanston Hospital*, 240 Ill. App. 3d 881, 892 (1992). In addition, Supreme Court Rule 366(b)(2)(iii) provides, "A party may not urge as error on review of the ruling on the party's post[]trial motion any point, ground, or relief not specified in the motion." 155 Ill. 2d R. 366(b)(2)(iii). The failure to raise an issue in a posttrial motion constitutes a waiver of that issue on appeal. *Metropolitan Life Insurance Co. v. Nauss*, 226 Ill. App. 3d 1014, 1019 (1992) (citing *Brown v. Decatur Memorial Hospital*, 83 Ill. 2d 344 (1980)).

After carefully examining the record and the plaintiff's posttrial motion, we conclude that the issue of whether Trooper Connor's testimony was properly admitted has been waived. Even if the plaintiff had not waived the issue, we believe that the error was harmless. An error in the admission of evidence does not require a reversal if there has been no prejudice

18

or if the evidence has not materially affected the outcome of the trial. *DeBow v. City of East St. Louis*, 158 Ill. App. 3d 27, 44 (1987). In light of the additional competent evidence in the record, including the photographs of the lack of damage to the vehicles and the testimony of the defendant's experts, we cannot say that Trooper Connor's testimony materially affected the outcome of the trial.

For the foregoing reasons, the judgment of the circuit court is affirmed.


Affirmed.


DONOVAN and WEXSTTEN[1], JJ., concur.

---

[1]Justice Hopkins participated in oral argument. Justice Wexstten was later substituted on the panel and has read the briefs and listened to the audiotape of oral argument.