SECOND DIVISION
February 6, 2007

No. 1-06-0518

| | | |
|---|---|---|
| GRACE BARANIAK, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 02 L 597 |
| | ) | |
| CASSANDRA KURBY, | ) | Honorable |
| | ) | Ralph Reyna, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE SOUTH delivered the opinion of the court:

Plaintiff, Grace Baraniak, appeals from orders of the circuit court of Cook County, which entered judgment on a jury verdict in her favor in the amount of $15,000 and denied her posttrial motion.

On May 31, 2000, plaintiff and defendant, Cassandra Kurby, were involved in a motor vehicle accident when the front of defendant's vehicle struck the rear of plaintiff's car. Subsequently, plaintiff filed a negligence action alleging she sustained permanent injuries and disability as a result of defendant's negligence and sought a judgment in excess of $50,000.

At trial, plaintiff testified that on May 31, 2000, she was stopped at a red light in the intersection of Golf Road and Shermer Road in the village of Morton Grove, Illinois, when the car she was driving was struck in the rear by a vehicle being driven by defendant. Plaintiff described the impact as "hard," which caused her to "flip backwards" and strike the back of her head against

the headrest. Immediately following the accident, she experienced a headache, pain in her neck, and a lack of feeling or sensation in her hands. She was transported by ambulance to a hospital emergency room where she was treated and released that evening. Six days later she went to her personal physician, who diagnosed her as having suffered a central spinal cord injury and whiplash. He referred her to a neurological surgeon, who treated her for her pain and limited mobility and prescribed steroids, pain killers, a cervical collar, and physical and massage therapies. Plaintiff underwent this regimen until the neurosurgeon discharged her in September of 2000, at which time he advised her there was nothing else that could be done for her.

In February 2001, plaintiff went to another neurological surgeon, who referred her to the Rehabilitation Institute of Chicago where she underwent physical therapy for approximately four months. She also went to the chronic pain clinic, which is part of the Rehabilitation Institute, and received treatment from a psychologist, physician, nurse, acupuncturist, and physical therapist due to her continuing pain and limited mobility. At the time of trial, she testified she was still under the care of a physician for the pain and limited mobility. She further testified that her medical bills amounted to $51,095.48 and had been paid.

The defense admitted liability but challenged the nature and extent of plaintiff's injuries. Defendant testified that her speed was about five miles an hour at the moment of the impact, which she described as "light," and that plaintiff, although she was "frazzled," did not appear to have been injured. Defendant's expert witness, a physician with a specialty in neurosurgery, testified by way of an evidence deposition that plaintiff's injuries were resolved by the time she was discharged by the first neurological surgeon in September 2000, and that all subsequent

treatment she received by the other neurosurgeons and physical and massage therapists was unrelated to the accident of May 31, 2000.

Three of plaintiff's treating physicians, all of whom were neurosurgeons or neurologists, testified that her injuries and subsequent treatment, even up to the time of the trial, were related to the accident.

During the jury instructions conference, plaintiff's attorney tendered Illinois Pattern Instructions, Civil, No. 30.22 (2005 ed.) (hereinafter IPI Civil No. 30.22 (2005)), which states:

> "If you find for the plaintiff you shall not speculate about or
>
> consider any possible sources of benefits the plaintiff may have
>
> received or might receive. After you have returned your verdict the
>
> court will make whatever adjustments are necessary in this regard."

The defense attorney objected to the giving of this instruction, which the court sustained on the grounds that no evidence had been presented which would justify the giving of this particular instruction.

After the jury was charged by the court, it began its deliberations on October 11, 2005. At 3:05 p.m. the jury sent out the following note:

> "(1) For medical bills: Who paid the $50,935.48 in medical
>
> bills (plaintiff/insurance)?"

Plaintiff's attorney retendered IPI Civil No. 30.22 (2005) in light of and in response to the jury's question. The trial judge refused to give the instruction and sent a note to the jury, which read:

1-06-0518

"You have received all the evidence and instructions in this

case. Please continue to deliberate until you reach a verdict."

At 3:48 p.m., the jury sent out a second note, which read:

"Our understanding is that the medical bills were paid in full –

our question is who specifically paid the bills – the insurance or the

plaintiff?"

Plaintiff's counsel renewed his request to give IPI Civil No. 30.22 (2005), and once again

the trial judge denied it and sent another note to the jury, which read:

"You have received all of the evidence and instructions in

the case. Please continue to deliberate until you reach a verdict."

The jury then returned a verdict awarding plaintiff $15,000, which was itemized as

follows:

"Disability:   $1,250.00

Pain and suffering:   $1,819.50

Reasonable expense of necessary medical care, treatment and

services received:   $8,201.50

Value of earnings lost:   $3,729.00."

Plaintiff filed a posttrial motion, arguing *inter alia*, that the trial court erred in failing to

give IPI Civil No. 30.22 (2005) after the jury's questions, which denied her a fair trial. The trial

court denied that motion, and this appeal followed.

The plaintiff has raised the following issues for our review: (1) whether the trial court

- 4 -

1-06-0518

committed reversible error when it failed to give IPI Civil No. 30.22 (2005), the "Collateral Source - Damages" instruction; (2) whether the trial court improperly ruled that photographs depicting little or no visible damage to the plaintiff's and defendant's automobiles were admissible in evidence in the absence of expert testimony that a correlation existed between the amount of damage to the cars and the extent of plaintiff's injuries and when no property damage claim was asserted; and (3) whether the trial court improperly ruled that other photographs of the plaintiff's automobile depicting structural damage to the bumper and fender were inadmissible after having ruled that some photographs of the plaintiff's and defendant's vehicles were admissible.

The general rule is that, when a trial court receives a question from the jury during deliberations, the court has a duty to instruct the jury further or clarify the point of law that has caused doubt or confusion. Van Winkle v. Owens-Corning Fiberglas Corp., 291 Ill. App. 3d 165, 172 (1997). The trial court, however, has discretion and in exercising that discretion, depending on the nature of the question, may choose to draft an answer to a jury question or abstain from responding. Hojek v. Harkness, 314 Ill. App. 3d 831 (2000). We review the decision made by the trial judge in this case under an abuse of discretion standard. Van Winkle, 291 Ill. App. 3d at 173.

A trial court may exercise is discretion and properly decline to answer a jury's inquiries where the instructions are readily understandable and sufficiently explain the relevant law, where further instructions would serve no useful purpose or would potentially mislead the jury, when the jury's inquiry involves a question of fact, or if the giving of an answer would cause the court to express an opinion that would likely direct a verdict one way or another. People v. Reid, 136 Ill.

- 5 -

1-06-0518

2d 27, 39 (1990). However, jurors are entitled to have their inquiries answered. People v. Childs, 159 Ill. 2d 217, 228 (1994). Thus, the general rule is that the trial court has a duty to provide instruction to the jury where it has posed an explicit question or requested clarification on a point of law arising from facts about which there is doubt or confusion. Reid, 136 Ill. 2d at 39. This is true even though the jury was properly instructed originally. See People v. Morris, 81 Ill. App. 3d 288, 290-91 (1980). When a jury makes explicit its difficulties, the court should resolve them with specificity and accuracy. Bollenbach v. United States, 326 U.S. 607, 612-13, 90 L. Ed. 350, 354, 66 S. Ct. 402, 405 (1946); People v. Caballero, 102 Ill. 2d 23, 42 (1984). The failure to answer or the giving of a response that provides no answer to the particular question of law posed has been held to be prejudicial error. Childs, 159 Ill. 2d at 229.

Plaintiff relies heavily upon Hojek v. Harkness, 314 Ill. App. 3d 831 (2000), a First District case, where the plaintiff and defendant were involved in a car collision. Hojek, 314 Ill. App. 3d at 832. As in the instant case, the defendant admitted liability but challenged the nature and extent of the plaintiff's injuries, contending she "merely sustained a 'soft tissue' injury." Hojek, 314 Ill. App. 3d at 832. During deliberations, the jury sent a question to the trial judge regarding medical expenses and whether or not they were covered by insurance. Hojek, 314 Ill. App. 3d at 832-33. The trial judge, who was engaged in another trial, proposed to give the collateral source instruction, but defense counsel objected and asked the judge to rule on his objection. Hojek, 314 Ill. App. 3d at 833. However, the judge did not interrupt the second trial to rule on the objection, and, consequently, the jury continued deliberating until it returned a verdict in favor of the plaintiff without its question being answered. Hojek, 314 Ill. App. 3d at

833. Furthermore, the amount of the verdict was substantially lower than the amount requested by plaintiff's counsel during closing arguments. Hojek, 314 Ill. App. 3d at 832-33.

In reversing and remanding for a new trial, this court held that the jury should have received an answer to its question in the form of the collateral source instruction. Specifically, the court stated:

> "During the trial, the jury submitted a simple question: 'Were medical expenses covered by insurance?' Neither party raised the issue of insurance during the trial. However, the jury received no answer to its question regarding insurance and received no guidance as to what if any role the issue of insurance should play in its deliberation process. *** The written jury instructions submitted to the jury made no mention of insurance. Therefore, at the point when the jury asked the question, the original written jury instructions which were available for the jury to rely on provided no explanation of the law on this issue. ***
>
> Moreover, a simple instruction would have been useful to the jury and provided an accurate answer to its question. *** This simple instruction would have resolved the confusion of the jurors and properly informed them not to infer, speculate or discuss whether medical expenses were covered by insurance." Hojek, 314 Ill. App. 3d at 837.

1-06-0518

In the instant case, no evidence was presented to the jury with respect to medical insurance. Plaintiff testified that her medical bills as of the time of trial were $51,095.48 and had been paid. However, the source of that payment was never asked of or testified to by her or any other witness, nor was the issue ever raised by the parties. The two notes sent out by the jurors within a few minutes of one another indicate they were concerning themselves over a matter with which they should not have been concerned. The purpose of IPI Civil No. 30.22 (2005) is to inform the jurors that they must not infer, speculate or discuss among themselves whether medical expenses were covered by insurance. The simple expedient of giving IPI Civil No. 30.22 (2005) after the jurors sent out the first note, and certainly the second one, would have served a useful purpose by providing them with an accurate answer and eliminating their obvious confusion. Although the jury was properly instructed, there was a duty to answer its questions, and the failure to do so resulted in prejudicial and reversible error, mandating a new trial.

Although we are remanding for a new trial, we shall address plaintiff's second issue since it may arise on remand.

Prior to trial plaintiff made a motion *in limine* to prohibit the following:

> "(6) Any statement, suggestion, or argument that, a) the
>
> visible damage to and b) the monetary amount of property damages
>
> paid for, any vehicle involved in the collision is equivalent or related
>
> to the nature and extent of any claim or personal injury sustained by
>
> the Plaintiff. Statements, suggestions, and arguments of this nature
>
> require expert testimony by a qualified witness as to the relationship

between visible damage or incurred property damage and the resultant injuries. Defendant has not disclosed, nor presented, an expert opinion to support such a relationship, and accordingly, such statement, suggestion and argument invites the jury to improperly speculate on issues that require expert testimony. ***

***

14. Use of photographs taken by the Defendant's insurance company of the Plaintiff's vehicle for any purpose including, but not limited to, 1) demonstrative evidence, 2) evidence upon which any witness's testimony relies, and 3) cross-examination, on the basis, that the Defendant cannot lay the necessary foundation to authenticate that the photographs are a fair and accurate representation of the Plaintiff's vehicle at the relevant time framework."

Plaintiff's counsel argued that the photographs were not relevant since none of the medical experts, including defendant's, opined that the property damage could be correlated to plaintiff's injuries and that, without supporting medical testimony, the photographs would invite improper jury speculation. The trial court ruled that the physician witnesses would be barred from utilizing photographs of the cars for the bases of their medical opinions, and defendant would not be allowed to use photographs of the vehicles while questioning the medical experts. However, defense counsel advised the court that it intended to use the photographs of plaintiff's vehicle

during his cross-examination of plaintiff. The court then ruled without comment that the photographs of plaintiff's car during defendant's cross-examination would be admitted.

Generally, this court reviews a trial court's rulings on a motion *in limine* under an abuse of discretion standard. Beehn v. Eppard, 321 Ill. App. 3d 677, 680 (2001). A decision to admit a photograph also rests within the discretion of the trial court. Bullard v. Barnes, 102 Ill. 2d 505, 519 (1984). Relevant evidence is that which has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Wojcik v. City of Chicago, 299 Ill. App. 3d 964, 971 (1998).

In DiCosola v. Bowman, 342 Ill. App. 3d 530 (2003), this court stated that "no Illinois case stands for the proposition that photographs showing minimal damage to a vehicle are automatically relevant and must be admitted to show the nature and extent of a plaintiff's injuries. There simply is no such bright-line rule that photographs depicting minimal damage to a post-collision vehicle are automatically admissible to prove the extent of a plaintiff's bodily injury or lack thereof." DiCosola, 342 Ill. App. 3d at 535. Therefore, we are required to do a case-by-case analysis in order to determine whether the admission of photographs to prove the extent of plaintiff's injury was an abuse of discretion.

Defendant argues that the vehicle photographs were not admitted into evidence in order to support a connection between the amount of the property damage and the extent of plaintiff's injuries but were used to aid the jury in assessing plaintiff's credibility when she testified that the impact was "hard." To illustrate her point, defendant cites to defense counsel's closing argument, in which he stated:

"When you take these photographs back into the jury room, you can use them to [the] issue of credibility.

The plaintiff testified that this was a really hard or heavy impact. Now, since so much of what is going on here depends on her credibility, take a look at the photos and see whether it is credible that this is a hard or heavy impact or the defendant's testimony that this was a light impact, a fender bender impact, so to speak ***."

During the trial, none of the medical expert witnesses testified that the amount of the damage to plaintiff's vehicle correlated to her injuries. Although plaintiff's credibility was an issue for the jury to determine, that is true in every case since it is axiomatic that it is the function of juries to determine the credibility of all of the witnesses who testify before them. If we were to accept defendant's reasoning, we would essentially be conducting an end run around the relevancy rule, and photographs of damaged vehicles would always be admissible in trials of this nature on the grounds that credibility is always an issue. The effect of such a ruling would be to allow parties to accomplish indirectly what the courts have already determined is improper absent expert testimony, *i.e.*, to argue or even imply that there is a correlation between the extent of vehicular damage and the extent of a person's injuries caused by an accident. Therefore, upon retrial, absent expert testimony on the correlation between the vehicular damage and plaintiff's injuries, the photographs of the parties' damaged vehicles shall be excluded.

Given our ruling on this issue, we need not address plaintiff's final contention.

1-06-0518

Accordingly, the judgment of the circuit court is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

WOLFSON, P.J., and HALL, J., concur.