NOTICE
Decision filed 12/12/17. The text of this decision may be changed or corrected prior to the filing of a Petiion for Rehearing or the disposition of the same.

2017 IL App (5th) 160264

NO. 5-16-0264

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| WILLIAM KEVIN PEACH, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Marion County. |
| | ) | |
| v. | ) | No. 14-L-28 |
| | ) | |
| LYNSEY E. MCGOVERN, | ) | Honorable |
| | ) | Kevin S. Parker, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE CATES delivered the judgment of the court, with opinion.
Justices Goldenhersh and Chapman concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, William Kevin Peach, brought suit against defendant, Lynsey E. McGovern, for personal injuries he sustained in an automobile accident. The jury returned a verdict in favor of defendant, and the circuit court of Marion County entered judgment on that verdict. Plaintiff appeals, contending the jury verdict was against the manifest weight of the evidence, especially where defendant was adjudged negligent as a matter of law. Plaintiff further asserts that the trial court erred in allowing defense counsel, over objection, to present evidence pertaining to the relative amount of damage sustained by the vehicles and argues that there was a direct correlation between the amount of damage to the vehicles, as depicted in photographs, and plaintiff's injuries. We reverse and remand.

1

¶ 2   The evidence revealed that plaintiff was on his way home around 10 p.m. after visiting with his girlfriend on the evening of July 17, 2010. As he was driving home, he had to stop at the intersection of North Shelby Street and East Main Street in Salem, Illinois, to allow traffic to clear. While waiting at the stop sign, the rear of plaintiff's 1985 Nissan pickup truck was struck by another vehicle. Plaintiff testified that even though he had his foot on the brake, his truck was pushed some 5 to 10 feet into the intersection. When the collision occurred, plaintiff's head hit the back window of his truck and his neck began hurting immediately. The vehicle that rear-ended plaintiff's truck was a 2001 Mitsubishi Eclipse driven by defendant, who was also on her way home. Defendant claimed she was fully stopped behind plaintiff, when her foot slipped off the brake. She further testified that her vehicle simply rolled into the rear of plaintiff's truck. Plaintiff, on the other hand, estimated defendant's speed to have been 20 to 25 miles per hour at the time of the impact. He also noticed that defendant was on her cell phone.

¶ 3   After the accident, both plaintiff and defendant got out of their vehicles to inspect the damage. The back bumper of plaintiff's truck was dented, and the front bumper of defendant's Eclipse was cracked. Defendant was unwilling to call the police or exchange information with plaintiff. Instead, defendant decided to leave the scene. As she was leaving, plaintiff was able to get the license plate number from defendant's car. Plaintiff drove back to his girlfriend's house because his neck was hurting so badly. He testified that it was as if somebody suddenly set a match to his neck. Plaintiff also had a headache and felt like he was in a daze. The girlfriend testified that plaintiff came back to her house about 15 minutes after he left. Because plaintiff appeared to be a bit disoriented, and was complaining of a severe headache and neck pain, the girlfriend indicated she took plaintiff to the emergency room at a nearby hospital.

¶ 4 While plaintiff was in the emergency room undergoing various tests, the police were contacted so that a police report could be made. Plaintiff gave the license plate number he had recorded from defendant's car to the police. When the police contacted defendant, she admitted she had been involved in a vehicular accident. Defendant was subsequently ticketed for failure to reduce speed to avoid an accident and pled guilty to the offense.

¶ 5 Plaintiff testified that since the accident, he has had chronic neck pain. A few days after the accident, plaintiff visited his regular physician, Dr. Luecha. Plaintiff was given steroids and a neck brace, and he underwent therapy, but nothing helped with the pain. He was then referred to Dr. Templer, a pain management specialist in Mount Vernon. Plaintiff underwent an MRI of his cervical spine in September and began treatment with Dr. Templer in October of 2010. The MRI revealed that plaintiff was not suffering from degenerative changes that had accumulated over the years, but rather from more recent injuries, consistent with having been rear-ended in a motor vehicle collision. Specifically, the MRI showed a straightening of the normal lordosis, consistent with muscle spasm and pain, and a right disc protrusion at C3-4, with foraminal narrowing on the right, compression of the right lateral recess, compression of the dural sac, and compression of the anterior margin of the spinal cord. Plaintiff was diagnosed with cervical sprain or strain, consistent with whiplash.

¶ 6 Plaintiff further stated he was suffering from pain radiating down into his right arm and tenderness in the upper trapezius muscle. He indicated that he still has to rest his neck every three to four days because of the pain. Plaintiff testified that prior to the collision, he had experienced no problems with his neck. By the time of the trial, his medical bills had exceeded $23,000. Plaintiff's final diagnosis was whiplash syndrome, chronic neck pain, cervical facet

3

arthropathy, cervical disc herniation, cervical annular tear, and possible cervical radiculopathy, cervical foraminal stenosis, and cervical degenerative disc disease.

¶ 7    Dr. Templer, the pain management physician, testified that with whiplash, the neck moves beyond its typical range of motion, and the overextension and flexion of the neck is the mechanism that causes the chronic pain. Dr. Templer noted that even very low speed collisions can cause hyperflexion/hyperextension injuries. Dr. Templer further opined that the accident caused the whiplash, annular tear, and loss of integrity of disc space reported in plaintiff's medical records.

¶ 8    Plaintiff also testified that the dented bumper was not the only damage to his truck caused by the collision. According to plaintiff, a few days after the accident, the brackets on the truck bed failed. As a result, plaintiff's vehicle was no longer drivable.

¶ 9    At the close of the evidence, the court directed a verdict for plaintiff on the issue of negligence and reserved the questions of causation and damages for the jury. The jury subsequently returned a verdict in favor of defendant, awarding plaintiff no damages. This appeal followed.

¶ 10    Plaintiff first argues on appeal that the jury verdict was against the manifest weight of the evidence. The only evidence of damages and causation came from plaintiff, his girlfriend, and Dr. Templer. Both plaintiff and his girlfriend testified that plaintiff received medical care and treatment immediately after being involved in the motor vehicle accident. Both also testified that ever since the accident, plaintiff was suffering from pain in his neck. The MRI revealed injuries consistent with whiplash. Dr. Templer also testified that plaintiff's injuries were consistent with whiplash. Dr. Templer further stated that low speed impact could cause such injuries.

¶ 11   Defendant did not put on any witnesses to contradict plaintiff or the medical evidence. Instead, during defendant's closing argument, she relied on photographs to defeat plaintiff's claims. As plaintiff points out, defense counsel was allowed, over objection, to present photographs depicting damage to the two vehicles involved and to argue that plaintiff exaggerated the impact between the two vehicles in order to relate his neck injuries to the rear-end collision. While it may have been possible that some other event caused plaintiff's injuries and medical findings, there was no substantive evidence introduced during trial to suggest the occurrence of any such events. Nor was there any testimony, even during cross-examination, regarding a correlation between the amount of vehicular damage, relative to the speed of the vehicles involved, and plaintiff's injuries.

¶ 12                                            Analysis

¶ 13   We recognize that it is the function of the trial court to determine the admissibility and relevance of evidence, and its ruling will not be disturbed on appeal absent an abuse of that discretion. *Ford v. Grizzle*, 398 Ill. App. 3d 639, 647, 924 N.E.2d 531, 540 (2010). Additionally, we note that evidence is deemed relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Ford*, 398 Ill. App. 3d at 648; Ill. R. Evid. 401 (eff. Jan. 1, 2011). Photographs are used at trial for a variety of purposes. Some require the testimony of an expert witness, while others may not. The general rule is that a photograph is admissible if it has a reasonable tendency to prove a material fact at issue in the case. *Smith v. Baker's Feed & Grain, Inc.*, 213 Ill. App. 3d 950, 952, 572 N.E.2d 430, 431 (1991). Here, plaintiff filed a motion *in limine* to preclude the introduction of the photographs of the vehicles. Plaintiff made no claim

for property damage, and the fact of the impact was uncontested. The question then became why the photographs were relevant, and thus admissible, at all.

¶ 14    During the evidence deposition of Dr. Templer, he indicated that he did not have the expertise to relate the damage depicted in the photographs to the various medical findings in plaintiff's neck, such as the overextension and flexion of plaintiff's neck, which allegedly caused plaintiff's chronic pain, the right disc protrusion of C3-4, with foraminal narrowing, the annular tear, and the loss of integrity to the disc space. Defendant had no other witness who could testify that the damage depicted in the photographs did not cause the various injuries testified to by Dr. Templer. The only evidence regarding the photographs was that they depicted the damage to the vehicles. While the court initially deferred a ruling on the admissibility of the photographs, plaintiff's motion *in limine* to bar their use was ultimately denied, and the photos were admitted.

¶ 15    When faced with cases involving rear-end collisions between two vehicles, courts often refer to *Fronabarger v. Burns*, 385 Ill. App. 3d 560, 895 N.E.2d 1125 (2008), in resolving whether to admit photographs depicting damage to the vehicles involved in a collision. The court in *Fronabarger* declined to accept a rigid rule that photographs depicting damage to the vehicles were always admissible or that expert testimony was always necessary for such photographs to be admissible. See *Fronabarger*, 385 Ill. App. 3d at 564. Rather, according to the court, the critical question in admitting such photographs into evidence is whether the jury can properly relate the vehicular damage depicted in the photos to the injury, without the aid of an expert. *Fronabarger*, 385 Ill. App. 3d at 564-65. In reaching this decision, the court in *Fronabarger* declined to follow the earlier holding of *Baraniak v. Kurby*, 371 Ill. App. 3d 310, 862 N.E.2d 1152 (2007), which concluded that, absent expert testimony on the correlation between vehicular

6

damage and a plaintiff's injuries, photographs of the parties' damaged vehicles should be excluded.

¶ 16     Here, while the photographs may have been relevant to allow the jury to infer the relative speed of the vehicles, there was clearly no evidence at trial relating the damage depicted in the photographs as the proximate cause of plaintiff's overextension and flexion of his neck, the annular tear, the right disc protrusion at C3-4, or the loss of the integrity of plaintiff's disc space. Indeed, these kinds of injuries, as described by Dr. Templer, are not within the ken of the ordinary juror and require the testimony of an expert witness. Therefore, under the circumstances of this case, we believe the rule expressed in *Baraniak* is a better view than that adopted in *Fronabarger.* We reach this conclusion after noting that the cases relied upon in *Fronabarger* all involved evidence from expert witnesses on the very issue of the correlation between vehicular damage and a plaintiff's injuries. Even *Fronabarger* had an expert witness who opined that if a vehicle does not sustain any evidence of impact, it is therefore likely that the people in the vehicle are not going to have significant evidence of an impact. *Fronabarger*, 385 Ill. App. 3d at 563. That expert was proffered by the defendant to relate the lack of vehicular damage relative to the injuries claimed by the plaintiff. See also *Jackson v. Seib*, 372 Ill. App. 3d 1061, 866 N.E.2d 663 (2007) (expert relied on photographs of vehicles in order to reach an opinion regarding the nature and severity of the impact); *Ferro v. Griffiths*, 361 Ill. App. 3d 738, 836 N.E.2d 925 (2005) (photographs relevant because of expert testimony regarding the nature and extent of injury). Such is not the case here.

¶ 17     The facts in *Baraniak* are strikingly similar to those before us. In *Baraniak*, the plaintiff was stopped at a red light when the car she was driving was struck in the rear by a car being driven by the defendant. The plaintiff described the impact as "hard" and claimed that it caused

her head to strike the back of her headrest. As a result, the plaintiff immediately complained of a headache, pain in her neck, and lack of sensation in her hands. She went to the hospital and was treated and released. Six days later, she saw her personal physician, who diagnosed the plaintiff with a spinal cord injury and whiplash. The plaintiff sought medical treatment for over a year and amassed medical bills in excess of $50,000. The defense admitted liability, but challenged the nature and extent of the plaintiff's injuries. The defendant offered the testimony of an expert witness, who indicated that the plaintiff's injuries were resolved by the time she was discharged by her first neurosurgeon. The plaintiff offered the testimony of three of her treating physicians who related her medical treatment and injuries to the accident. The plaintiff argued that it was an abuse of discretion to allow defense counsel to use the photographs during closing argument to argue the lack of injury to the plaintiff, as no expert had related the damage illustrated by the photographs to the nature and extent of the plaintiff's injuries. The defendant argued that she was not using the photos to show a lack of damages, but was using the photos to argue which party was more "credible."

¶ 18    The *Baraniak* court held that to allow the use of photos to argue credibility would be an "end run around the relevancy rule, and photographs of damaged vehicles would always be admissible in trials of this nature on the grounds that credibility is always an issue. The effect of such a ruling would be to allow parties to accomplish indirectly what the courts have already determined is improper absent expert testimony, *i.e.*, to argue or even imply that there is a correlation between the extent of vehicular damage and the extent of a person's injuries caused by an accident." *Baraniak*, 371 Ill. App. 3d at 317-18. The *Baraniak* court recognized the rule set forth in *DiCosola v. Bowman*, 342 Ill. App. 3d 530, 794 N.E.2d 875 (2003), that "no Illinois case stands for the proposition that photographs showing minimal damage to a vehicle are

automatically relevant and must be admitted to show the nature and extent of a plaintiff's injuries. There simply is no such bright-line rule that photographs depicting minimal damage to a post-collision vehicle are automatically admissible to prove the extent of a plaintiff's bodily injury or lack thereof." *DiCosola*, 342 Ill. App. 3d at 535. The court therefore reversed the judgment of the lower court and remanded for a new trial. Upon remand, the court held that, absent expert testimony on the correlation between the vehicular damage and plaintiff's injuries, the photographs of the parties' damaged vehicles shall be excluded. We believe this reasoning is sound in the case before us as well.

¶ 19    Here, the trial court, relying on *Fronabarger*, denied plaintiff's motion *in limine* to bar use of the photographs at trial. Defense counsel was allowed, over objection, to admit the photographs of the vehicles and then argue that there was a direct correlation between the amount of damage to the vehicles and plaintiff's damages. As previously noted, defense counsel presented no expert or medical evidence to support his argument. Instead, defense counsel waited until closing argument to present the photographs to the jury and argue that plaintiff could not have been injured to the extent claimed because the photos of the vehicles showed minimal damage. Closing argument is the opportunity for the lawyers to comment on the evidence introduced at trial. "Comments on the evidence during closing argument are proper if proven by direct evidence or if reasonably inferable from the facts." *Magna Trust Co. v. Illinois Central R.R. Co.*, 313 Ill. App. 3d 375, 396, 728 N.E.2d 797, 814 (2000). Here, defense counsel provided his own testimony regarding the relationship of the damage depicted in the photographs to plaintiff's injuries. Under the circumstances presented here, to allow defendant's counsel to make such an argument, wholly unsupported by any evidence, was an abuse of the trial court's discretion. We also conclude that the court erred at the outset in failing to grant plaintiff's motion

*in limine* with respect to the admissibility of the photographs for the purpose of attempting to relate plaintiff's injuries to the vehicular damage depicted in the photographs, without expert testimony to support such an inference. Plaintiff suffered cervical injuries that required the testimony of a physician expert. Without this expert testimony regarding a relationship between what was seen in the photos and the injuries suffered by plaintiff, the photographs were simply not relevant to any issues in the case, and irrelevant evidence is not admissible. *DiCosola*, 342 Ill. App. 3d at 533-35, 538.

¶ 20    In addition to this abuse of the court's discretion, we also believe the jury's verdict is against the manifest weight of the evidence. Dr. Templer testified that he was not able to correlate the vehicle damage and plaintiff's injury, as he was not qualified to make such an analysis, and not all of the facts that would be necessary to make the calculations were available. Dr. Templer did opine, however, that a low speed vehicular impact can cause the type of injuries plaintiff was suffering from and that plaintiff's injuries were related to the rear-end impact. Plaintiff's MRI was consistent with Dr. Templer's opinion, as was the testimony from both plaintiff and his girlfriend pertaining to plaintiff's injuries immediately after the accident. We therefore conclude that the jury's verdict in this instance was against the manifest weight of the evidence.

¶ 21    A verdict is against the manifest weight of the evidence when the opposite result is clearly evident or where the jury's findings are unreasonable, arbitrary, and not based on the evidence. *Ford*, 398 Ill. App. 3d at 651. Here, the court had found defendant negligent as a matter of law, but left the issue of causation and damages for the jury. A verdict in favor of plaintiff on the issues of causation and damages should have followed, given the testimony and medical evidence presented at trial. From the evidence, it is clear that the jury should have

10

concluded that defendant's negligence proximately caused plaintiff's injuries. We find it unreasonable that any jury, under the circumstances and the evidence presented, would not have at least awarded recovery for plaintiff's hospital expenses incurred immediately after the collision. We recognize that the jury can disbelieve any testimony, at any time, even when uncontradicted, but we conclude that, in this instance, the jury's findings are unreasonable and not based on the evidence presented at trial. We therefore reverse the judgment in favor of defendant.

¶ 22    Finally, we must address one other issue before remanding this cause back to the circuit court. Defendant filed a motion to strike plaintiff's appendix and all related argument pertaining to the appendix. That motion was ordered to be taken with the case. The appendix consists of two articles on the relationship between the damage to vehicles and injuries to the occupants of those vehicles. Neither article was submitted to the trial court as evidence in support of any argument asserted by plaintiff. Consequently, neither article is part of the record on appeal. Because the introduction of new evidence on appeal is improper, any evidence that was not presented to the trial court should not be considered on appeal and should be stricken. *People ex rel. Madigan v. Leavell*, 388 Ill. App. 3d 283, 287-88, 905 N.E.2d 849, 854 (2009). Defendant's motion to strike that portion of plaintiff's appendix and any argument in the brief referencing those articles is therefore granted.

¶ 23    For the foregoing reasons, we reverse the judgment entered by the circuit court of Marion County and remand this cause for further proceedings. Defendant's motion to strike, taken with the case, is hereby granted.


¶ 24    Reversed and remanded; motion to strike granted.

11

2017 IL App (5th) 160264

NO. 5-16-0264

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| WILLIAM KEVIN PEACH, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Marion County. |
| | ) | |
| v. | ) | No. 14-L-28 |
| | ) | |
| LYNSEY E. MCGOVERN, | ) | Honorable |
| | ) | Kevin S. Parker, |
| Defendant-Appellee. | ) | Judge, presiding. |

**Opinion Filed:** December 12, 2017

**Justices:** Honorable Judy L. Cates, J.

Honorable Richard P. Goldenhersh, J., and
Honorable Melissa A. Chapman, J.,
Concur

**Attorney for Appellant** George R. Ripplinger, Ripplinger & Zimmer, LLC, 2215 West Main Street, Belleville, IL 62226-6692

**Attorney for Appellee** Edward L. Adelman, Goffstein, Raskas, Pomerantz, Kraus & Sherman, LLC, 7701 Clayton Road, St. Louis, MO 63117